IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | |
|---|---|
| WILLIAM PENNELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action |
| vs. ) | No. 10-5009-CV-SW-JCE |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**O R D E R**

Plaintiff is appealing the final decision of the Secretary denying his application for disability benefits under Title II of the Act, 42 U.S.C. § 401 et seq. Pursuant to 42 U.S.C. § 405(g), this Court may review the final decisions of the Secretary. For the following reasons, the Secretary's decision will be affirmed.

Standard of Review

Judicial review of a disability determination is limited to whether there is substantial evidence in the record as a whole to support the Secretary's decision. 42 U.S.C. § 405(g). See Travis v. Astrue, 477 F.3d 1037, 1040 (8th Cir. 2007). "Substantial evidence is evidence that a reasonable mind would find adequate to support the ALJ's conclusion." Nicola v. Astrue, 480 F.3d 885, 886 (8th Cir. 2007). The Court will uphold the denial of benefits so long as the ALJ's decision falls within the available "zone of choice." See Casey v. Astrue, 503 F.3d 687, 691 (8th Cir. 2007). "An ALJ's decision is not outside the 'zone of choice' simply because [the Court] might have reached a different conclusion had [it] been the initial finder of fact." Id. (quoting

1

Nicola, 480 F.3d at 886).

In hearings arising out of an application for benefits, the claimant has the initial burden of establishing the existence of a disability as defined by 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A). Wiseman v. Sullivan, 905 F.2d 1153, 1156 (8th Cir. 1990). In order to meet this burden, the claimant must show a medically determinable physical or mental impairment that will last for at least twelve months, an inability to engage in substantial gainful activity, and that this inability results from the impairment. Id. Once a claimant demonstrates that the impairment is so severe as to preclude the performance of past relevant work, the burden shifts to the Secretary to prove some alternative form of substantial gainful employment that claimant could perform.

The standard by which the ALJ must examine the plaintiff's subjective complaints of pain is well-settled. The ALJ must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as the claimant's daily activities, the duration and frequency of pain, precipitating and aggravating factors, dosage and effects of medication, and functional restrictions. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When rejecting a claimant's subjective complaints, the ALJ must make an express credibility determination detailing the reasons for discrediting that testimony, and discussing the factors set forth in Polaski. The ALJ must give full consideration to all of the relevant evidence on the Polaski factors and may not discredit subjective complaints unless they are inconsistent with the evidence in the record as a whole. Haynes v. Shalala, 26 F.3d 812, 814 (8th Cir. 1994).

Discussion

Plaintiff was 58 years old at the time of the hearing before the ALJ, which was held on September 20, 2007.[1] He has a General Equivalency Diploma, and past relevant work as a security guard, construction front-end loader, welder, and lumber yard delivery driver. He filed an application for disability because of back pain that resulted from an on-the-job accident where he was hit by a drunk driver in 2002.

At the hearing before the ALJ, plaintiff testified that he last worked in June of 2004. He was a security guard, and had performed that job for a little over a year. Mainly, he rode a golf cart or drove in a car, from 7:00 P.M. until 7:00 a.m., patrolling the premises. He worked 40 to 50 hours a week. He did no lifting. Plaintiff testified that the job ended in June when his father passed away and he moved from Florida back to Missouri. He had also worked in construction with heavy equipment, worked as a welder, and at a lumber yard. When he worked running a front-end loader, he was hit by a drunk driver, and injured his back. The company would not hire him back unless he was 100 percent recovered. After that is when he started working as a security guard, because his company wouldn't take him back. He had no problems with that job because his "boss had a bad back, and you know, he made sure that I always had a vehicle or a golf cart to ride around on." [Tr. 214]. Not all the security guards received this accommodation. He doesn't know if he could do the job today because it hurts his back to sit for a long period of time. He is only comfortable in his recliner, leaning back, with a heating pad on his back. He was not getting any treatment for his back at the time of the hearing because the doctor in Florida

---

[1] The Court notes that this record contains the transcript from another administrative hearing with plaintiff, held on April 22, 2010. Because that hearing is not part of the record before the Court, it will not be further addressed.

said there was nothing more they could do, and that he would just have to learn to live with it. He takes pain medication, which helps. He had epidural injections in his back while in Florida, which helped the first time, but did not help the next time. The pain medication does not make the pain go away completely, and one of the medications knocks him out. His pain is in his low back. Whenever he steps down, he testified that fluid squirts out of a small tear in the cushion between the vertebras, and hits the sciatic nerve. The pain and tingling goes all the way down into his left leg and toes. If he watches where he is walking, this does not happen too often-- perhaps once every two weeks. The tingling usually lasts about half an hour to an hour, and after that it's just an annoying kind of pain. If he mows the yard on a riding lawn mower one day, he will have to sit in his recliner with a heating pad most of the next day. The bouncing of the mower hurts his back and causes cramps. Standing in front of the sink washing dishes makes his pain worse. He does most of the cooking and washing dishes, and he can do these things if he sits down for while and lets his back relax. He can probably stand for 30 minutes before he needs to sit down, and then would need to rest 45 minutes to an hour. Other than his back pain, plaintiff testified that he gets anxiety attacks ever once in a while. He shakes, sweats, has chills and a hard time breathing. Lately, he has had these twice a week, and when he has an attack, he takes a Zoloft, which works. Plaintiff testified that he has good days and bad days, and has bad days about twice a week. His back hurts all the time, but hurts worse on bad days. Walking or stepping wrong can make the pain worse. On a typical day, he gets up, watches TV, does a little housework, and mows the yard if it needs it.

The ALJ found that plaintiff has not engaged in substantial gainful activity since June 20, 2004, the alleged onset date. He further found that the medical evidence established that

plaintiff suffers from degenerative disc disease and obesity, which he found to be severe impairments. The ALJ found that plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment. He found that plaintiff had only received minimal treatment for anxiety and depression, and that these are not severe impairments. It was the ALJ's finding that plaintiff was only partially credible. He found that plaintiff has the residual functional capacity ["RFC"] to perform light work with restrictions. It was his finding that plaintiff could lift up to 20 pounds occasionally and 10 pounds frequently; that he had no limits on sitting, standing or walking; that he is limited to occasional stooping, crouching, kneeling, crawling and climbing ramps and stairs; and that he should avoid climbing ladders, ropes and scaffolds and avoid concentrated exposure to cold temperatures and vibrations. The vocational expert testified, in response to a hypothetical from the ALJ, that he would be able to perform his past work as a merchant patroller. It was the finding of the ALJ that plaintiff was able to perform his past relevant work as a merchant patroller and other jobs that exist in the national economy. He noted that plaintiff was limited to jobs that were light/semi-skilled, such as security guard, gate guard, and a solderer.

The issues raised by the plaintiff in this case are that the ALJ erred by failing to properly assess plaintiff's RFC because he did so without relating it to any specific medical evidence or testimony, and did not incorporate sufficient limitations; and that he failed to properly assess plaintiff's credibility by improperly disregarding plaintiff's statements about pain and restrictions.

After plaintiff's on-the-job injury, an MRI in 2002 indicated that he had a tear and mild foraminal narrowing at L-4-5 spinal disc, but that he had no significant disc contour

abnormalities, nerve root compromise, herniation, or stenosis. He was evaluated two months later by Dr. Robert Hamilton, who evaluated his low back pain, and recommended epidural steroid injections to relieve his pain and help to determine if it was caused by the disc or was from degeneration and arthritis in the spine. Dr. Hamilton noted that plaintiff was ambulating well, and had no motor or sensory deficits. He administered two injections into plaintiff's lumbar spine; plaintiff reported some pain relief initially, but later said the injections had not improved his pain. The doctor then recommended an analgesic discogram. He performed this procedure, and determined that plaintiff's L3-5 discs were abnormal; the doctor suggested that his pain might be a combination of discogenic pain and nerve root irritation. In 2003, Dr. Feiertag evaluated plaintiff's functional capacity, and found that he was functioning at a "light physical capacity," capable of occasionally lifting 12 ½ pounds. [Tr. 106]. He found that he could work full time, and that his impairment rating was 5 percent. Plaintiff saw Dr. Fassy in April of 2003, to whom he reported that he took minimum pain medication, and that his pain was tolerable if he didn't do too much. He stated that he had more pain with sitting, walking, and standing, and that resting and medication helped. Dr. Fassy rated plaintiff with a 7 percent impairment in functioning. He noted a mildly antalgic gait, left leg weakness related to low back pain, mild restrictions in range of motion, and tenderness in his low back. He found plaintiff to demonstrate "self-limiting behavior," and found if plaintiff did not take pain medication to try and control the pain, he would need to find a work position "that is sedentary and that allows him to recline." [Tr. 199]. Dr. Fassy found that his prognosis was poor, as was his motivation, but that he believed that plaintiff "has chronic discogenic pain which is difficult to treat short of narcotics." [Id.]. He found that plaintiff could function in a sedentary capacity and a light duty

capacity at the maximum, with restrictions such as repositioning after 30 minutes of sitting or standing. Dr. Hamilton accepted Dr. Feiertag's impairment assessment at 5 percent the last time he saw plaintiff, where he concluded that follow-up was not necessary. Later medical records indicate that plaintiff continued to complain of back pain to various doctors; he continued to not take pain medication, and to describe his pain at the low end of a 10-point scale. It was also recommended that he exercise, and his stable gait was noted. The most recent medical records are from Dr. Dean, who noted that he did not take any pain medication regularly, and that his pain was about a 2 on a 10-point scale. The doctor advised him to lose weight and exercise. She also denied his request for a handicapped parking license because he could walk 50 feet "without stopping to rest or complaining of pain," and had a "normal gait." [Tr. 182].

Regarding the ALJ's credibility determination, plaintiff contends that the ALJ erred in finding that plaintiff was not motivated to work because he had had many years of low earnings. He further contends that his daily activities, such as riding on a lawn mower and then having to sit in a recliner the entire next day, are not indicative of a person who could work on a full-time basis. He asserts that he explained why he did not take pain medication regularly, which was because the side effects were so strong. It is plaintiff's position that the ALJ misinterpreted his statements and the medical records, thereby erring in finding plaintiff not credible.

Having fully reviewed the record, the Court finds that there is substantial evidence in the record to support the ALJ's finding regarding plaintiff being partially credible. In evaluating a claimant's allegations, the ALJ must consider, in addition to the medical evidence, the Polaski factors. These include prior work history, daily activities, duration and intensity of pain,

effectiveness and side effects of medication, aggravating factors, and functional restrictions. Bowman v. Barnhart, 310 F.3d 1080, 1083 (8th Cir. 2002). In discrediting subjective claims, the ALJ cannot simply invoke Polaski or discredit the claims because they are not fully supported by medical evidence. Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000). Instead, the ALJ must make an express credibility determination that explains, based on the record as a whole, why the claims were found to be not credible. Id. at 971-72. "Where adequately explained and supported, credibility findings are for the ALJ to make." Id. at 972.

While it is true that the ALJ's credibility assessment was not lengthy, it is clear from the record as a whole that the ALJ had fully reviewed the evidence, including the medical evidence of record, and plaintiff's testimony. The ALJ noted that no treating or examining source had ever rendered the opinion that plaintiff was disabled from all work activity. "From his own testimony, the claimant has engaged in a variety of daily activities which is inconsistent with a claim of disabling back pain. It is also noted that he does not take pain medication on a consistent basis which indicates that his pain is not as severe as he alleged." [Tr. 17]. The ALJ also observed that plaintiff was working after his accident, and quit working when he moved after his father died. "In these circumstances, the claimant's alleged onset of disability does not appear to be related to his impairments." [Id.].

Based on a full review of the record, the Court concludes that the ALJ adequately detailed the reasons for discrediting plaintiff's testimony, and adequately discussed the factors set forth in Polaski. Plaintiff's testimony regarding his daily activities was not consistent with a disabling condition. Additionally, there is evidence that his condition improved with medication, although he only took it infrequently. Further, the record indicates that while he

8

complains of back pain, the injury he suffered incurred in 2002, and he worked full-time after that. While he did not return to his former type of heavy work, he did work long hours, for 40-50 hours a week. Plaintiff consistently rated his pain on the lower end of the ten-point scale. He frequently reported to his doctors that he felt good. While there is no question that he suffers from low back pain, the record as a whole does not establish that he has a disabling impairment. Therefore, the Court finds that the ALJ relied on substantial, relevant and supporting evidence in explaining his reasons for discrediting plaintiff's complaints. Ghant v. Bowen, 930 F.2d 633, 637 (8th Cir. 1991).

Regarding the RFC finding, plaintiff contends that it is not clear how the ALJ established his limitations, as he noted some limits from one examining source, but disregarded a physical RFC because it was not prepared by an acceptable medical source. He contends that the ALJ summarized some of the medical records, but did not discuss the records from Drs. Hamilton and Feiertag, two treating sources. He submits that there is medical evidence from acceptable medical sources that clearly conflict with the ALJ's RFC, and that he did not explain the conflict.

Having fully reviewed the record, the Court finds that the ALJ's decision reflects that he carefully considered plaintiff's course of treatment, reviewed all the relevant diagnostic tests and medical records, as well as his credibility, and relied on the opinion of the vocational expert. Plaintiff had the burden to come forward with relevant evidence of his restrictions. The Commissioner's regulations state that it is the claimant's responsibility to provide medical evidence to show that he or she is disabled. See 20 C.F.R. §§ 404.1512, 416.912 (2008); Roth v. Shalala, 45 F.3d 279, 282 (8th Cir.1995). Additionally, the Eighth Circuit has recognized that the RFC finding is a determination based upon all the record evidence, not just "medical"

evidence. See Pearsall v. Massanari, 274 F.3d 1211, 1217-18 (8th Cir. 2001); Dykes v. Apfel, 223 F.3d 865, 866-67 (8th Cir.2000) (citing 20 C.F.R. § 404.1545; SSR 96-8p at pp. 8-9). The RFC formulation is a part of the medical portion of a disability adjudication. Although it is a medical question, the RFC findings are not based only on "medical" evidence, i.e., evidence from medical reports or sources. Rather, an ALJ has the duty, at step four, to formulate RFC based on all the relevant, credible evidence of record. See McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000) (the Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations).

Here, the Court finds that there is substantial evidence to support the ALJ's decision regarding plaintiff's RFC because he properly considered all the evidence of record in analyzing plaintiff's credibility, and then properly considered all of the evidence of plaintiff's restrictions found to be credible in determining his RFC. In terms of the amount of weight given to the opinions of Drs. Hamilton and Feiertag, two treating sources, it is apparent from the record that these physicians treated plaintiff shortly after his injury, over one year before his alleged onset date. Additionally, after this, plaintiff returned to full-time work. It is noted, moreover, that even though Dr. Feiertag, in 2003, found that plaintiff was limited to lifting 12 ½ pounds, he also believed that he could return to working full time. Dr. Hamilton adopted the conclusions of Dr. Feiertag. Later, when Dr. Fassy saw plaintiff, he noted improvement in plaintiff's condition, and felt that plaintiff could perform light work if he took his pain medication. He also opined that plaintiff could lift 20 pounds occasionally and 10 pounds frequently, which were limitations adopted by the ALJ. He stated that plaintiff could not repetitively bend, lift, twist, squat or lean

forward, which the ALJ also incorporated. It is clear, moreover, that the ALJ reviewed the records of Dr. Hamilton, given that he discussed treatment plaintiff received from him in the form of epidural injections and referred to his records as a whole. The most recent medical records are from Dr. Dean, who noted plaintiff stated that he has chronic low back pain, which is exacerbated when he tries to do anything. She also noted that he did not take any pain medication regularly, and that his pain was about a 2 on a 10-point scale. The doctor advised him to lose weight and exercise. She also continued pain medication to use as needed. There is no report in her records that plaintiff complained of side effects from pain medication. The doctor also observed that plaintiff's gait and joints were normal.

The Court finds that there is substantial evidence in the record to support the ALJ's conclusions. The RFC finding is a determination based upon all the record evidence, not just medical evidence. Having fully reviewed the record, the Court finds that there is substantial evidence to support the ALJ's determination plaintiff that had the RFC to perform a limited range of light work, including his past relevant work as he performed it. In reliance on the opinion of a vocational expert, he found that plaintiff could perform light, semiskilled work such as a security guard, gate guard, and solderer. Based on the record as a whole, it cannot be said that the ALJ erred in his RFC assessment.

Based on the foregoing, the Court finds that there is substantial evidence in the record to support the ALJ's decision that plaintiff does not suffer from a disabling impairment, and that he was not disabled under the Act during the time period in question. Dukes v. Barnhart, 436 F.3d 923, 928 (8th Cir. 2006). The ALJ's finding that plaintiff was not disabled is supported in the record as a whole.

Accordingly, the decision of the Secretary should be affirmed.

It is hereby

ORDERED that the decision of the Secretary should be, and it is hereby, affirmed.

                                        /s/ James C. England
                                         JAMES C. ENGLAND
                                        United States Magistrate Judge

Date:    9/7/11